**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NISHAN SINGH,<br><br>                Petitioner,<br><br>    v.<br><br>JAMES JANECKA, et al.,<br><br>                Respondents. | Case No. EDCV 26-2379-PVC<br><br>**MEMORANDUM DECISION AND ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE** |

**I.**

**<u>INTRODUCTION</u>**

On May 5, 2026, Petitioner, an alien detainee, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, alleging that his detention violates the Due Process Clause of the Fifth Amendment, the INA, 8 U.S.C. § 1226(a), and *Maldonado Bautista v. Santacruz*, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025), *reconsideration granted in part*, 2025 WL 3713982 (C.D. Cal. Dec. 18, 2025), *and amended and superseded on reconsideration*, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025).[1]  The Petition seeks an

---

[1] On December 18, 2025, the court in *Maldonado Bautista* entered final judgment and granted declaratory relief to all members of the Bond Eligible Class.  *See Bautista v. Santacruz*, 2025 WL 3713987, at *32 (C.D. Cal. Dec. 18, 2025), *judgment entered sub*

order requiring Respondents to immediately release him from immigration detention, or in the alternative, provide him with a bond hearing at which the government must establish by clear and convincing evidence that Petitioner presents a risk of flight or danger, and pay Petitioner's costs and reasonable attorney's fees pursuant to the Equal Access to Justice Act.  (Dkt. No. 1 at 19–20).[2]  On May 12, 2026, Respondents filed an Answer to the Petition for Writ of Habeas Corpus, conceding that Petitioner is a member of the Bond Eligible Class certified in *Maldonado Bautista*.  (Dkt. No. 12 at 2.)  The Answer did not address the substance of Petitioner's other claims or his request for immediate release, other than to argue, without citation to authority, that "[w]hile Petitioner seeks immediate release, Dkt. 1 at 19, to the extent Petitioner would be entitled to any remedy via the habeas petition, at most it would be ordering a bond hearing."  (Dkt. No. 12 at 2).

On May 13, 2026, Petitioner filed a Traverse, renewing his request for immediate release and arguing that although Respondents now acknowledge that Petitioner is entitled to a bond hearing, they still have not provided one.  (Dkt. No. 14 at 2).

---

*nom. Maldonado Bautista v. Noem*, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025).  Pursuant to the final judgment entered in *Maldonado Bautista*, "the Bond Eligible Class members are detained under 8 U.S.C. § 1226(a), are not subject to mandatory detention under § 1225(b)(2), and are entitled to consideration for release on bond by immigration officers and, if not released, a custody redetermination hearing before an immigration judge." *Maldonado Bautista v. Noem*, 2025 WL 3678485, at *1 (C.D. Cal. Dec. 18, 2025).

[2] For ease of reference, when citing to the filings, the Court uses the page numbers generated by CM/ECF shown in the blue ribbon at the top of each page of each court filing.

## II.

## FACTUAL BACKGROUND

Petitioner is a native and citizen of India.  (Dkt. No. 1-1 at 1).  Petitioner was detained after entering the United States on April 22, 2024.  (Dkt. No. 1 at 7).  He was processed by immigration authorities and released on his own recognizance.  (*Id.*).  Petitioner complied with all immigration court appearances and reporting requirements.  (*Id.*).  He appeared at a routine ICE check-in on February 3, 2026, at which time he was re-detained.  (*Id.*).  He has remained in custody since that date.  (*Id.*).  He has no criminal history.  (*Id.*).  He has not been provided a bond hearing.  (*Id.*).  He requested a bond hearing before an Immigration Judge, but the request was denied for lack of jurisdiction.  (*Id.*).  Petitioner is pursuing applications for asylum, withholding of removal, and protection under the Convention Against Torture.  (*Id.* at 6).

## III.

## LEGAL STANDARDS

Federal district court possess the authority to grant petitions for writ of habeas corpus by a person who claims to be held "in custody in violation of the Constitution or laws or treaties of the United States[.]"  28 U.S.C. § 2241(a), (c)(3).  "The petitioner carries the burden of proving by a preponderance of the evidence that he is entitled to habeas relief."  *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); *see also Sepulveda Ayala v. Bondi*, 794 F. Supp. 3d 901, 911 (W.D. Wash. 2025) (noting that immigration detainee bears burden of proving by a preponderance of the evidence that he is entitled to habeas relief).

3

## IV.

## <u>DISCUSSION</u>

Petitioner states three claims against Respondents: a due process claim, an INA claim, and a claim for violation of the decision in *Maldonado Bautista.*  The Court begins with Petitioner's due process claim and concludes that Petitioner's detention violates due process and requires his immediate release.

### A.    Habeas Jurisdiction

As an initial matter, this Court has habeas jurisdiction over this case.  8 U.S.C. § 1226(e) provides: "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."  "That provision does not, however, preclude habeas jurisdiction over constitutional claims or questions of law." *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017) (quotation marks and citations omitted).

Petitioner challenges the constitutionality and sufficiency of the process by which he was arrested and re-detained after having been released.  Therefore, this Court has habeas jurisdiction under 28 U.S.C. § 2241 to consider these claims. *See Hernandez*, 872 F.3d at 987.

### B.    Petitioner's Due Process Claim

A writ of habeas corpus may be granted to any petitioner who demonstrates "[h]e is in custody in violation of the Constitution or laws or treaties of the United States[.]"  28 U.S.C. § 2241(a), (c)(3).  "[T]he essence of habeas corpus is an attack by a person in

custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "[A]t its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Rasul v. Bush*, 542 U.S. 466, 474 (2004). A petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Davis*, 384 F.3d at 638.

Petitioner argues that his re-detention after being released violates his due process rights under the Fifth Amendment because he was denied an individualized hearing before a neutral decisionmaker, at which the government established clear and convincing evidence of flight risk or danger, before he was re-detained. (Dkt. No. 1 at 18). Respondents assert that if Petitioner is entitled to any remedy, at most it would be ordering a bond hearing. (Dkt. No. 12 at 2).

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. Although "[the] Fifth Amendment's protections do not extend to aliens outside the territorial boundaries [of the United States,] . . . once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993).

"Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (cleaned up). The *Mathews* test balances three factors: (1) "the private interest that will be affected by the

official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335; *see also Zinermon v. Burch*, 494 U.S. 113, 127 (1990). "Applying this test, the [Supreme Court] usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon*, 494 U.S. at 127 (emphasis in original) (collecting cases).

The first *Mathews* factor is Petitioner's private interest. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.[3] "The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (citing, *e.g.*, *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (finding prison parolees have due process liberty interest)).

Because Petitioner was initially released on his own recognizance after being initially detained when he entered the country, he has a significant liberty interest in remaining free from detention that must be protected by adequate procedural safeguards. *See Morrissey*, 408 U.S. at 481–82 ("The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions."); *Doe*, 787 F. Supp. 3d at 1093. Even if Respondents had argued that DHS has extensive discretion

---

[3] The Supreme Court "has said that government detention violates [the Due Process] Clause unless the detention is ordered in a criminal proceeding with adequate procedural protections, or, in certain special and narrow nonpunitive circumstances, where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690 (cleaned up). Immigration removal proceedings are civil, not criminal, and courts assume they are nonpunitive in purpose and effect. *Id.*

in deciding whether an individual should be detained or re-detained, "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." *Hernandez*, 872 F.3d at 981. Here, Petitioner was released from DHS custody after his initial apprehension and had been free for nearly two years, living in the community without criminal arrests or violations of the conditions of his release. His release constituted an "implied promise" that his liberty would not be revoked unless he failed to live up to the conditions of his release. *See Morrissey*, 408 U.S. at 482. Here, Petitioner has lived up to the conditions of his release for nearly two years. Accordingly, Petitioner's private interest in retaining his liberty is significant.

The second *Mathews* factor is the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards. While "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings," the Supreme Court "has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). The INA grants the Secretary of Homeland Security and other authorized officials broad discretion to grant or deny parole. 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(a). That discretion, however, is not unbounded and requires, at minimum, compliance with the procedural requirements of the INA.

Based on the undisputed facts in the record, the Court finds the risk of erroneous deprivation is considerab le here. Petitioner was neither arrested pursuant to a warrant, as required by 8 U.S.C. § 1226(a), nor provided written notice of the termination of his release on his own recognizance and an opportunity to be heard before he was re-detained. Respondents do not contest that Petitioner has abided by the conditions of his initial release from DHS custody almost two years before his re-detention. Additionally, Respondents held Petitioner in detention for over three months before agreeing to provide

7

him with a bond hearing, and he remains detained in their custody to this day, even though he was not re-detained validly. Petitioner, thus, appears to have been deprived of his liberty interest erroneously based on Respondents' failure to comply with the INA and Petitioner's rights under the Due Process Clause.

Respondents appear to take the position that an offer of a late bond hearing satisfies due process. However, if the Immigration Court denies bond more than two years after Petitioner was originally released and more than three months *after* he was re-detained, such a decision cannot support Petitioner's continued detention and cure the underlying arrest and re-detention, which were in violation of Petitioner's due process rights, and thus invalid. *See Zinermon*, 494 U.S. at 127 (finding "that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property."); *see, e.g.*, *Magomed Mumaev v. Fereti Semaia, et al.*, No. 5:25-CV-03409-FLA (MAR), 2026 WL 530765, at *5 (C.D. Cal. Feb. 20, 2026). Accordingly, the Court finds the risk of erroneous deprivation of Petitioner's liberty interest was substantial based on Respondent's failure to comply with the INA and due process when he was re-detained.

The final *Mathews* factor is the government's interest. Respondents fail to establish that the government has any interest in allowing Respondents to arrest Petitioner, revoke his release on his own recognizance, and re-detain him without complying with the requirements of the INA and due process. Respondents, similarly, do not offer any argument or explanation for why Petitioner could not have been provided with notice and any opportunity to be heard *before* he was re-detained, as is generally required. Respondents, thus, fail to establish that the government has any interest in Respondent's continued detention.

Respondents' argument that the request for release should be denied because they now agree to a bond hearing more than three months after illegally re-detaining Petitioner

8

is unpersuasive. Petitioner's due process rights were violated when he was re-detained. Respondents cannot now point to an offer of a bond hearing more than three months after that illegal re-detention to assert that Petitioner has not identified a due process violation. Accepting Respondents' argument would effectively vitiate the Fith Amendment's due process protections.

After considering all of the *Mathews* factors, the Court concludes that Petitioner is entitled to immediate release on procedural due process grounds. Having found Respondents violated Petitioner's procedural due process rights, the Court need not address Petitioner's remaining claims. Nothing prevents Petitioner from raising these claims again in the future should the government re-detain Petitioner following the procedures set forth here.

## V.

## **CONCLUSION**

For the reasons stated, IT IS ORDERED that: (1) Judgment be entered GRANTING the Petition; (3) Petitioner be immediately released under the same conditions as he was released prior to his re-detention; (2) Respondents file a Notice of Compliance on or before **May 17, 2026**, attesting to Respondents' compliance with this Order; (3) Respondents are prohibited from re-detaining Petitioner absent notice and a hearing before an immigration judge at which the government must justify his detention by clear and convincing evidence that he is a danger or a flight risk.

The matter is deemed closed. The Court **ORDERS** the Clerk to vacate any pending dates and to close the case. Judgment is **ENTERED** in favor of Petitioner.

As to Petitioner's request for an award of attorney's fees and costs, the Court will consider an application under the Equal Access to Justice Act requesting costs and reasonable attorney's fees that is filed within 30 days of entry of final judgment in this action.  *See Rahimi v. Semaia*, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("The Court will consider an application requesting costs and reasonable attorney's fees under the EAJA that is filed within 30 days of final judgment in this action.").

IT IS SO ORDERED.

Dated: May 15, 2026

PEDRO V. CASTILLO
UNITED STATES MAGISTRATE JUDGE

10